# Commonwealth, et al. v. J. B. Clay & Company,

(Decided June 11, 1926.)

## Appeal from Nicholas Circuit Court.

1. Taxation—Net Income from Land is Not Controlling in Determining its Market Value for Purpose of Taxation.—Though net income from land is a circumstance to be considered in determining its market value for taxation, it is not controlling.
2. Taxation.—Rental income from lease contract, not shown to have been made at public auction after due advertisement, held entitled to but little weight in arriving at true value of land for taxation.
3. Taxation.—Judgment of circuit court valuing land for taxation should not be reversed unless clearly against weight of evidence.
4. Taxation—Evidence Held to Justify Finding that Market Value of Land for Purposes of Taxation was at Least $30.00 Per Acre.—Evidence that surrounding land was valued between $36.00 and $51.00 per acre for purposes of taxation, and that land in dispute had been valued as high as surrounding land for over five years, held to justify finding that market value of land for tax purposes was at least $30.00 per acre.

FRANK E. DAUGHERTY, Attorney General, GARDNER K. BYERS, Assistant Attorney General, and FOSTER V. COX, for appellant.

I. B. ROSS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

The board of supervisors of Nicholas county in the early part of the year 1925, while sitting as such, fixed for purposes of taxation the value of 4,750 acres of land lying in the county and owned by appellee company at $162,000.00. The owners appealed to the quarterly court and it agreed with the board and fixed the same valuation. They then appealed to the Nicholas circuit court, and upon trial had therein the land was valued at $125,000.00, but the judgment directed it assessed at 80% thereof, or a total valuation of $100,000.00, and from that judgment appellants have appealed.

Only a question of fact is involved in the case. It is uncontradictedly proven, and also conceded by counsel for both sides, that land in the county prior to and at the time of this assessment, which was of the date of July 1, 1924, was assessed at an average of practically 79% of its actual value and in the immediate vicinity of

the tract involved it was assessed at as much as 80% of its actual market value, and the commonwealth concedes that such per cent of the actual value should be the assessment in this case.

It is proven that this tract of land was assessed and upon which taxes were paid in the year 1916, at $84,000.00; the next year at $95,000.00, and from that time to and including the assessment made on July 1, 1923, from $133,000.00 to $175,750.00. The year preceding the one in controversy it was assessed at $172,-250.00, but Judge W. R. Shackleford, who was the manager for the two owners, one of whom was his wife, testified that while such assessments were made he knew and realized that they were too high and that he finally concluded after the assessment involved to contest the valuation. He also testified that the land was now rented for $6,500.00 gross per year, which contract began about the beginning of the year here involved, but prior to that time it was rented for $12,500.00 per year gross, with the right in the lessee to expend part of that in the way of improvements. He does not attempt to fix a valuation on the land, since he stated that he was not sufficiently familiar with it to do so. The present lessees and some of their employees gave it as their opinion that the reasonable market value of the land did not exceed $20.00 per acre, and about six other witnesses, some of whom showed that they were reasonably familiar with the quality of the land and some of whom were not so familiar, placed the valuation from $20.00 to $30.00 an acre, only one of whom testified to a maximum value of $25.00 per acre. The average valuation by appellee's witnesses was $21.00 per acre. The witnesses for the Commonwealth, six in number, fixed the value at from $35.00 to $50.00 per acre, and among them was a member of the board of supervisors who lived in that vicinity and who was a justice of the peace in the county, and also the tax commissioner for the county. The others were landowners immediately adjacent to the tract, and all of them testified that such adjacent land was assessed for the same year at from $34.90 to $51.25 per acre, and the tax commissioner filed with his deposition a list of assessments of 15 other farms adjacent and in the immediate vicinity of the tract showing an assessment valuation of between $36.00 and $51.25 per acre. It was also proven that some short time before the assessment

involved the master commissioner sold at public sale a tract of land containing 188 acres in the immediate vicinity of appellee's land and received therefor $46.00 per acre, and this was the only proven sale of any land in that vicinity for a number of years past.

Some of the witnesses for the owners said that their land was of considerably less value than its surrounding farms, but we think that the large preponderance of the testimony shows that the general topography and character of appellee's land is practically the same as the tracts immediately adjoining it; although some of them have more costly improvements on them in proportion to the acreage, and they are also more accessible to a public road, since only about two miles of such road borders on the 4,750 acre tract, though there are country roads running through it. The evidence does not disclose the character of the improvements on the land involved further than that there are a number of tenant houses and one very substantial residence in which the superintendent of the lessees resides, and also that there are 12 or 15 stock and tobacco barns in reasonably good condition. The superintendent of the lessees testified that about one-third of the tract was valueless because of its roughness; while the other two-thirds was tillable if all of it was cleared, but that, perhaps, not exceeding one-half of it was in that condition. The use of the tract by the lessees is for pasturing as well as agricultural purposes.

While the net income from land is a circumstance that might be considered, yet it is not controlling, and it is not shown that the present lease contract was made at public auction after due advertisement, and the rental income can have but little weight in arriving at the true market value.

We are aware that the rule is, that the judgment of the circuit court in cases like this should be given considerable weight and should not be reversed unless clearly against the weight of the evidence, and which was so held in the cases of Brown v. Wayne County Board of Supervisors, 204 Ky. 550, and Grant County Board of Supervisors v. Williams, 204 Ky. 722. But, notwithstanding that rule, it is difficult for us under the evidence to conclude that the surrounding lands in this case are as much as or more than twice the value fixed by the circuit court in the judgment appealed from, or to conclude that the owners of the 4,750 acres quietly submitted to its as-

sessment for taxation for more than five years at a value as high if not higher than such surrounding lands if the truth was, as is now contended, that appellee's land was never worth but little more than one-half of the valuation fixed by the board of supervisors. Under all the circumstances we have concluded that the evidence as a whole fully justifies a finding that the reasonable market value of the land at the time of the assessment involved was at least as much as $30.00 per acre, and assessing it at 80% of that value would make the proper assessable one of $114,000.00.

Wherefore, the judgment is reversed, with directions to modify it by fixing its assessable value at the sum indicated.